# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 8, 2008

## STATE OF TENNESSEE v. MELVIN GOODMAN

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-05622    Lee V. Coffee, Judge**

---

### No. W2007-00956-CCA-R3-CD  - Filed October 8, 2008

---

The defendant, Melvin Goodman, was convicted by a Shelby County jury of one count of rape (Class B felony) and sentenced to a term of twenty years in the Department of Correction.  On appeal, he raises two issues for our review: (1) whether the evidence is sufficient to support the conviction; and (2) whether the trial court violated his Sixth Amendment rights by enhancing his sentence on the basis of judicially determined facts other than prior convictions.  Following review of the record, we conclude that the evidence is sufficient to support the conviction.  However, after plain error review, we conclude that the trial court erred in its application of enhancing factors based upon the holding in *State v. Gomez*, 239 S.W.3d 733 (Tenn. 2007) ("*Gomez II*"), and that it is necessary to vacate the sentence.  Accordingly, the judgment of conviction is affirmed,  but the sentence is vacated and the case is remanded to the trial court for resentencing in compliance with the dictates of *Gomez II*.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part, Reversed in Part, and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which, NORMA MCGEE OGLE and J.C. MCLIN , JJ., joined.

Robert W. Jones, District Public Defender; Garland Ergüden, Sanjeev Memula, and Harry Sayle, Assistant Public Defenders, for the appellant, Melvin Goodman.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Carrie Shelton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual Background

On the day of the incident, the seventeen-year-old victim, Jennifer Crisler, took her sister's boyfriend, Nick Johnson, to Memphis. Johnson requested that she take him to Momma B's, a convenience store, and, while there, he got into an altercation with a group of men in the parking lot. Afterwards, the men left the area, and Johnson requested that the victim take him to the defendant's home in order for him to find out where the men who had beaten him up could be found. The victim complied and drove to the defendant's home. However, the defendant was not at home, and the two then proceeded to a local liquor store at Johnson's request. They later returned to the defendant's home and found that he had returned. The victim and Johnson got out of the car, and Johnson introduced the victim to the defendant. After speaking with the defendant for a few moments, Johnson suddenly got into the victim's car and drove away, leaving the victim stranded at the defendant's home with no car, purse, or cell phone.

According to the victim, she sat on the front porch waiting for Johnson to return. While she remained there for several hours, the defendant was "going back and forth inside" to check on her. At one point, the victim asked for a glass of water and entered the home with the defendant. While she sat in the dining room looking at a magazine and drinking her water, the defendant offered her a marijuana cigarette, which she "took two hits off of." Afterwards, she returned outside and continued to wait for Johnson to return. Around dark, the defendant came outside and sat with the victim. She expressed concern about Johnson and his failure to return. The defendant replied that he knew where the defendant might be if he had gotten into trouble with the men from Momma B's.

At the defendant's suggestion, the two left his home and walked approximately two blocks to an abandoned house. The defendant entered the house to search for Johnson, but the victim remained outside. When she heard the defendant call her name, she took a few steps into the house, and the defendant grabbed her and led her further into the house. The two searched the house, including the upstairs, looking for Johnson. After determining that Johnson was not there, they again walked down the stairs. As they returned to the first floor, the defendant stepped in front of the victim and put his hand down her pants, inserting his finger in her vagina. The victim, rather than physically fighting with the defendant, told him "let's go," acting as if she was worried about Johnson and her car. Despite the fact that the victim said "no," indicating a lack of consent, the defendant pulled her into a room, even though she was "grasping the door facing with [her] right hand." He then removed her pants, pushed her to the ground, and inserted his penis into her vagina. After he ejaculated, the defendant jumped off the victim and threw her pants at her. The two then exited the home, with the defendant keeping his arm around the victim and guiding her back to his house.

When the two arrived at the defendant's home, the victim asked the defendant to use his telephone. When he entered the home to retrieve the telephone, the victim ran to a local business. Once there, she called her boss and asked him to come and pick her up. The defendant arrived at

the business a short while later and motioned through the window for the victim to come outside. When the victim refused, the defendant came inside. He was told to leave by the store clerk, and he did so.

The victim's boss, who had been at the home of the victim's mother when the victim called, came to Memphis to get the victim. The victim's mother also drove to Memphis in a separate car. When they arrived, the victim got into the car with her boss and a friend and told them what had occurred. Her mother stated that the victim "looked totally like a nervous wreck." After the victim told her what had occurred, she immediately called 9-1-1. The victim was later taken to the rape crisis center and examined. The examination revealed scratches on the victim's right arm and the presence of sperm in the vaginal area. DNA testing revealed that the sperm matched the defendant's DNA profile.

The defendant was indicted by a Shelby County grand jury for one count of rape. Following a jury trial, the defendant was found guilty as charged. At a subsequent sentencing hearing, the trial court sentenced the defendant to a term of twenty years as a Range II offender. After the trial court denied his motion for new trial, the defendant filed the instant timely appeal.

**Analysis**

On appeal, the defendant raises two issues for review. First, he contends that the evidence is insufficient to support the conviction. Second, he asserts that the trial court violated his Sixth Amendment rights by enhancing his sentence based upon the finding of judicially determined facts other than prior convictions.

## I. Sufficiency of the Evidence

In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). The scope of our examination of the evidence is not equivalent to that of the jury's. In a challenge to the sufficiency of the evidence, this court does not retry the defendant. We emphasize that our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible, or noncredible proof, as these issues are resolved solely by the jury. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Rather, we look to the record to determine whether there was substantive probative evidence to support the verdict. The second inquiry, the question of legal sufficiency, then follows: whether the record contains evidence from which the jury could have found the essential elements of the crime beyond a reasonable doubt. Every reasonable hypothesis of innocence need not be dispelled; it is only necessary that there exists proof which supports the elements of the crime. The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility

of witnesses, the weight and value to be given to the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *Cabbage*, 571 S.W.2d at 835.

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

As relevant here, rape is the "unlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by . . . the following circumstance[]":

> (2) The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent[.]

T.C.A. § 39-13-503(a)(2) (2003).

The defendant, though conceding that there is some evidence to support his conviction in light of the testimony of the victim, argues that the proof is not sufficient when properly viewed against the high standard enunciated in *Jackson v. Virginia* and Tennessee Rule of Appellate Procedure 13(e). Essentially, the defendant's argument is based upon a challenge to the victim's credibility. According to the defendant, the victim's credibility is impaired because she admitted smoking marijuana with the victim; her "signals" to the defendant were unclear as to her intentions; she resisted only "by yammering away about Johnson and her automobile"; and the rape examination revealed no internal injuries, no bruises, and only three superficial scratches on the victim's arm.

As previously noted, the scope of our examination of the evidence is not equivalent to that of the jury's. Again, in a challenge to the sufficiency of the evidence, this court does not retry the defendant. The purpose of our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible, or noncredible proof, as these issues are "entrusted exclusively to the jury as the triers of fact." *State v. Oody*, 823 S.W.2d 554, 558 (Tenn. Crim. App. 1991). The facts relied upon by the defendant to support his argument were placed before the jury. It is the jury's function to weigh the credibility of witnesses. As evidenced by its finding of guilt, the jury obviously rejected the defendant's testimony at trial that the sex was consensual and accredited the testimony of the State's witnesses.

In the light most favorable to the State, the proof at trial overwhelmingly supports the jury's verdict. There is no dispute that sexual penetration occurred in this case. The victim specifically

testified that the defendant, after leading her through the abandoned house, grabbed her, stuck his hand in her pants, and penetrated her vagina with his finger. She further testified that he pulled her into a room, removed her pants, pushed her onto the floor, and penetrated her vagina with his penis. Moreover, the defendant himself admitted the penetration and defended it only upon the ground that the sex was consensual. However, the victim specifically testified at trial that she said "no" and told the defendant that she wanted to leave. She testified that she did not consent to the penetration and that she so informed the defendant. The conflicting testimony was placed before the jury, whose function it is to evaluate the credibility of witnesses. Based upon the proof presented, we conclude that the evidence was more than sufficient to support the verdict.

## II. Enhancement of Sentence

Next, the defendant raises, for the first time on appeal, the issue of whether the trial court erred in its application of various enhancement factors in imposing the maximum sentence, contending that the enhancement violated his Sixth Amendment rights based upon the holding in *Blakely v. Washington*. Initially, we note that the crime for which the defendant was convicted occurred on April 15, 2004, but he was not sentenced until March 8, 2007. Despite the fact that the defendant was sentenced after the effective date of the 2005 amendments to our sentencing act, the amendments are not applicable in this case because the defendant's crime was committed prior to the effective date and no waiver of his *ex post facto* protections is contained in the record. *See* 2005 Tenn. Pub. Act ch.353 § 18; T.C.A. § 40-35-210 (2006), Compiler's Notes.

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby,* 823 S.W.2d at 169.

When conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and sentencing hearings; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statements made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2003); *State v. Brewer*, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993). Furthermore, we emphasize that facts relevant to sentencing must be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield,* 23 S.W.3d 279, 283 (Tenn. 2000)(citing *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997)). If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. *State v. Pike,* 978 S.W.2d 904, 926-27 (Tenn. 1998); *State v. Fletcher,* 805 S.W.2d 785, 789

(Tenn. Crim. App. 1991). The appealing party bears the burden of showing that the sentence is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001).

The appropriate sentencing range for a defendant convicted of rape and sentenced as a Range II offender is twelve to twenty years. T.C.A. § 40-35-112(b)(2) (2003). The presumptive sentence is the minimum within the range, but the court may adjust the sentence based upon the existence of applicable enhancement or mitigating factors. T.C.A. 40-35-310(c),(d),(e). In imposing the maximum sentence in this case, the trial court found the presence of five enhancement factors: (1) a previous history of convictions or criminal behavior in addition to those necessary to establish the appropriate range; (2) the offense was committed to gratify the defendant's desire for pleasure or excitement; (3) the defendant abused a position of private trust; (4) the circumstances created great potential for bodily injury; and (5) the defendant was adjudicated to have committed a delinquent act that would have been a felony if committed as an adult. *See* T.C.A. § 40-35-114 (2), (8), (16), (17), (21) (2003). The court also gave "some weight," pursuant to the "catchall mitigator," to the psychological trauma suffered by the defendant based upon his having witnessed his mother's suicide when he was a child. *See* T.C.A. § 40-35-113(13) (2003).

Initially, the State asserts that the defendant has waived review of his claim based upon his failure to object to the sentence on Sixth Amendment grounds at the time he was sentenced. At the time of sentencing in this case, the Tennessee Supreme Court had held that, despite *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, the Tennessee Criminal Sentencing Reform Act of 1989 did not run afoul of the Sixth Amendment right to jury trial as interpreted in *Blakely*. *State v. Gomez*, 163 S.W.3d 632, 654-61 (Tenn. 2005) ("*Gomez I*"), *vacated and remanded*, *Gomez v. Tennessee*, ___ U.S. ___, 127 S. Ct. 1209 (2007). On January 22, 2007, the United States Supreme Court released its decision in *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856 (2007), holding that California's sentencing scheme, which had numerous similarities to Tennessee's sentencing scheme, did not survive Sixth Amendment scrutiny under *Blakely*. The Court also vacated *Gomez I* and remanded the case for reconsideration in light of *Cunningham*. On remand, the Tennessee Supreme Court concluded that a trial court's enhancement of a defendant's sentence on the basis of judicially determined facts other than a defendant's prior convictions violated a defendant's constitutional rights under the Sixth Amendment to the United States Constitution. *Gomez II*, 239 S.W.3d at 740. However, the court reaffirmed the holding from *Gomez I* that a defendant who failed to challenge this issue prior to appeal waived plenary appellate review of the sentencing claims. Thus, if the issue is raised for the first time on appeal, as it is in the instant case, an appellate court's review is limited to whether the trial court committed plain error in sentencing the defendant. *Id*. at 737.

Rule 52(b) of the Tennessee Rules of Criminal Procedure provides that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of an accused at any time, even though the error was not raised in the motion for new trial or assigned as error on appeal." In order to constitute "plain error," the error must satisfy the following factors:

(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'

*State v. Smith*, 24 S.W.3d 274, 282 (quoting *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994)). "[A]ll five factors must be established by the record before [a reviewing court] will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id*. at 283. It is the defendant who bears the burden of persuasion to demonstrate plain error. *Gomez II*, 239 S.W.3d at 737.

In this case, review of the record clearly establishes the existence of four of the required factors in this case, as the record establishes what occurred at the sentencing hearing; a clear and unequivocal rule of law was breached with the application of enhancement factors other than prior criminal history; a substantial right of the defendant was affected because he was denied his Sixth Amendment right to a jury trial; and the record fails to reflect waiver for tactical reasons. *See id*. at 740-42. However, on appeal, the State, while conceding that the court erroneously applied the enhancement factor with regard to the position of private trust because the record fails to establish that the relationship between the defendant and the victim "promoted confidence, reliability, or faith[,]" *see State v. Gutierrez*, 5 S.W.3d 641, 645 (Tenn. 1999), contends that plain error review is not necessary to do substantial justice.

In *Gomez II*, our supreme court concluded that plain error review of a *Blakely* infraction was necessary to do substantial justice in that case. *Id*. at 742. To make a determination if substantial justice in this case requires plain error review, we must look at what sentence we might impose on the basis of the defendant's prior criminal record. In short, we look at the relative impact on sentence enhancement for prior criminal history versus the other inappropriately applied enhancement factors. The defendant concedes that the court properly applied the enhancement factor for prior criminal history. As noted by the trial court, the defendant has prior convictions of "two traffic offenses . . . [,] one other conviction for possession of marijuana[,] . . . two convictions for driving while license revoked, cancelled, suspended[,] . . . [and] some other traffic offenses Class C misdemeanor offenses[.]" Moreover, the defendant testified at trial that he had been using and selling marijuana for a long period of time. However, the trial court, in setting the sentence, specifically stated on the record that he gave "great weight" in his determination of the sentence to four of the five factors found to apply. Additionally, the trial court found some evidence of mitigation. Based upon these statements, it is apparent that the erroneously applied factors also had an impact on the court's decision to impose the maximum sentence. Additionally, we cannot conclude that the sentence is supported based upon the record before us. As such, the record establishes that the defendant was deprived of substantial justice and is, thus, entitled to relief. Accordingly, the sentence is vacated, and the case is remanded to the trial court for resentencing in compliance with the dictates of *Gomez II*.

## CONCLUSION

Based upon the foregoing, the judgment of conviction is affirmed.  However, the sentence is vacated and the case remanded for resentencing in compliance with this opinion.

                                        _____

                                        JOHN EVERETT WILLIAMS, JUDGE